1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAWUD HALISI MALIK, f/k/a DAVID RIGGINS,

               Plaintiff,

      v.

HAROLD CLARKE, *et al.,*

               Defendants.

Case No. C07-5160RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR: April 18, 2008**

     Before the Court is the motion for summary judgment of Defendants Harold Clarke, Ron Van Boening, Houston Wimberly, Mark Wesner, Larry Cook and Donald Walston. (Dkt. # 41). In support of their motion, Defendants submit the Declaration of Judy Hubert. *Id.*, Exh. 1. Plaintiff has responded and submits his Affidavit in opposition. (Dkt. # 43). Having carefully reviewed the motion, Plaintiff's opposition, Defendants' reply (Dkt. # 46), and viewing the evidence in the light most favorable to Plaintiff, the undersigned recommends that Defendants' motion for summary judgment be granted.

REPORT AND RECOMMENDATION - 1

# I. BACKGROUND

Plaintiff was committed to the custody of DOC under the name David W. Riggins. *Malik v. Brown*, 16 F.3d 330 (9th Cir. 1994) (Malik I), *mandate recalled*, 65 F.3d 148 (9th Cir. 1995) (Malik II), *appeal after remand*, 71 F.3d 724 (9th Cir. 1995) (Malik III).   While incarcerated Plaintiff converted to Islam and in January 1978 Plaintiff changed his name to Dawud Halisi Malik. *Id.* Plaintiff previously sued prison officials alleging that they violated his statutory and constitutional rights by refusing to process his mail and documents when he used his religious name.  *Malik, supra.*  In reversing the District Court's grant of summary judgment in favor of the defendants in that case, the Ninth Circuit ruled as follows:

> We agree that the state has a legitimate interest in continued use of an inmate's committed name.  But we see no legitimate penological interest in preventing Malik from using both his religious and his committed names.

16 F.3d at 334.

Subsequently, in September 1996, the parties in *Malik v. Brown*, No. C90-1366C, entered into a settlement agreement.

In this lawsuit, Plaintiff alleges that staff at the McNeil Island Corrections Center (MICC) violated his right to practice his religion under the First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) when they refused to allow him to purchase prayer oils, violated his First Amendment freedom of speech rights when they withheld his mail, violated his Eighth Amendment rights when they subjected him to psychological torture and intimidation and violated his Fifth and Fourteenth Amendment due process rights.  All of Plaintiff's claims relate to DOC policy requiring Plaintiff to use his committed name first followed by an AKA designation for his legally changed religious name.

1

## II. SUMMARY JUDGMENT

2

**A.    Standard of Review**

3

        In examining Defendants' motion, the Court must draw all inferences from the admissible

4

evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d

5

1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material

6

fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving

7

party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex*

8

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

9

        Once the moving party has met its burden, the opposing party must show that there is a genuine

10

issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

11

(1986).  The opposing party must present significant and probative evidence to support its claim or

12

defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  "A

13

plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that

14

belief, is no more than speculation or unfounded accusation about whether the defendant really did

15

act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028

16

(9th Cir. 2001).

17

**B.    Defendants' Proof**

18

        Defendants brought the summary judgment motion to dismiss all of Plaintiff's claims.  In

19

support of their motion, Defendants rely on numerous exhibits filed by the Plaintiff over the course of

20

this litigation.  The Court has spent an inordinate amount of time locating the various exhibits as they

21

were not associated with a docket number.  Counsel should cite to a CM/ECF docket number when

22

23

24

25

26    REPORT AND RECOMMENDATION - 3

reference is made to a pleading, attachment or exhibit which has been previously filed with the Court.[1]

In addition to the exhibits filed by the Plaintiff, Defendants rely on the Declaration of Judy Hubert, who is a legal liaison officer for MICC.  (Dkt. # 41, Exh. L).  Attached to Ms. Hubert's Declaration is an uncertified copy of an Offender Based Tracking System (OBTS), including an "Offender Chrono Report." This document relates to the Plaintiff's time at MICC, which he left on July 19, 2007.

Fed.R.Civ.P. 56(e)(1) requires that a supporting affidavit "must be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify to the matters stated."  The Declaration of Judy Hubert fails to meet even one of these requirements and therefore, the declaration and its attachment shall not be considered for any purpose.

### III.  UNDISPUTED FACTS

The facts, for purposes of this motion, are derived from the Court's review of Plaintiff's pleadings and exhibits.

DOC Policy 400.280, in effect on November 16, 2006, the first date noted in Plaintiff's Complaint, provides in relevant part:

> A.    An offender who obtains an order changing his/her name must use the name under which s/he was committed to the Department during all *official comunications* and in all matters relating to the offender's incarceration or community supervision, including outgoing and incoming mail.  The offender may add the *legally changed name* after the *committed name* using an AKA designation for the *legally changed name*.

(Dkt. # 51, Exh. 1) (emphasis in original).  This version was in effect from February 25, 2002 until February 12, 2007.  *Id*.

Policy 400.280 was revised on February 12, 2007.  *Id*.  There has been no change in the

---

[1]A summary of corrected references is attached to this R&R for the District Judge's convenience.

REPORT AND RECOMMENDATION - 4

policy regarding the order in which names must be used:

    A.    An offender who obtains an order changing his/her name must use the name under which s/he was committed to the Department for:

        1.    Any written or verbal communication between the offender and staff, contract staff, and volunteers,

        2.    In all matters relating to the offender's incarceration or community supervision, and

        3.    Use of the United States mail.

    B.    The offender may add the legally changed name *after* the committed name using an AKA designation for the legally changed name.

(Dkt. # 10, Exh. 1, Attach. A) [emphasis added].

On November 16, 2006, Plaintiff submitted an "Inmate Request to Transfer Funds" to Defendant Wimberly to process funds for the payment of a phone bill. (Dkt. # 2, Exh. A). On November 17, 2006, Defendant Wimberly returned the Inmate Request to Plaintiff because he did not put his committed name on the envelope. (Dkt. # 1, p. 3, Dkt. # 2, Exh. B[2]). Exhibit B shows that Plaintiff listed his religious/legal name, followed by his prisoner number, a slash and his committed name. (*Id.*, Exh. B). When Plaintiff complained that his religious/legal name was not being "acknowledged and recognized," Defendant Wimberly explained that DOC Policy 400.280 requires that the committed name be listed first, and then the legal name may be listed as well. (Dkt. # 2, Exh. C).

Plaintiff filed a grievance against Defendant Wimberly for his refusal to process the Plaintiff's mail. The Grievance Coordinator responded on December 5, 2006, stating: "Per 400.280 … you must use the committed name however you may add the legally changed name after the

---

[2]Plaintiff filed a Complaint (Dkt. # 1) and Memorandum in Support with Exhibits A-L (Dkt. # 2). Reference to page numbers of Plaintiff's Complaint are those used by Plaintiff.

REPORT AND RECOMMENDATION - 5

committed name using AKA designation for the legally changed name. (Your counselor is

correct.)."  (*Id*., Exh. G).  Plaintiff then pursued his grievance to the next level because he was

being required to "have [his] committed name first," in order for his mail to be processed.  (*Id.*,

Exh. I).

On March 8, 2007, Plaintiff submitted an Inmate Request to Transfer Funds for the purchase

of prayer oil from Save on Scents under the name of "Dawud Malik/D. Riggins" which request was

processed on April 4, 2007.  (Dkt. # 12, Exh. P, p. 3).

On March 8, 2007, Plaintiff also submitted an Inmate Request to Transfer Funds under the

name of Dawud Malik/D. Riggins for the purchase of athletic shoes from Eastbay the Athletic

SportSource.  (Dkt. # 5, Exh. N., p. 14 (CM/ECF pagination)).   On March 29, 2007, Defendant

Wimberly sent Plaintiff a note asking him to "please comply with the policy so we can move your

request [to order shoes from Eastbay] forward. Example 'Riggins, David AKA Dawud Malik.'"

(Dkt. # 5, Exh. N, p. 13 (CM/ECF pagination)).  Plaintiff filled out the request, again stating and

signing his name as "Dawud Malik/D. Riggins," and on the mailing envelope stating his name as

"Dawud H. Malik a/k/a D. Riggins."  (*Id*., Exh. N., p. 18).  Defendant Wimberly noted that this was

in violation of DOC Policy 400.280, Section B and that this was Plaintiff's second infraction.  *Id*.,

p. 17.  The request to transfer funds was processed on April 5, 2007.  (*Id*., Exh. P, p. 2).

When Plaintiff corresponded with Eastbay on March 7, 2007, regarding his purchase of the

athletic shoes, he included only his religious/legal name on his cover letter.  (Dkt. # 5, Exh. N, p. 11

(CM/ECF pagination)).

On March 9, 2007, Plaintiff sent a kite to his counselor, Defendant Wimberly, stating that

"per court order and DOC agreement that both names be attached to institutional interaction and

such.  Will you send out whatever requests that has both names on my kites, mail, etc.  I hope it will

REPORT AND RECOMMENDATION - 6

not be necessary to initiate another lawsuit by you denying my FIRST AMENDMENT

constitutional right." (Dkt. # 2, Exh. K). On March 12, 2007, Plaintiff was told he will be placed

on call-out on March 16, 2007 for a Facility Risk Management Team Meeting (FRMT). (Dkt. # 2,

Exh. K).

On March 16, 2007, Plaintiff sent a letter to Defendant Van Boening complaining that his

mail was not being sent out. (Dkt. # 2, Exh. L). In that letter, he also complained that the FRMT,

held with all the counselors in C-Unit to address the issue of the use of his names, was held for the

sole purpose to intimidate him. *Id*.

On March 27, 2007, Plaintiff received an infraction for violation of WAC # 102 (failure to

follow a direct order to follow DOC Policy 400.280), when Plaintiff placed his name on a request

for an attorney phone call form as "Dawud Malik/D. Riggins." (Dkt. # 5, Exh. N, p. 10; Dkt. # 12,

Exh. R). Plaintiff was sanctioned with 20 hours of extra duties.[3] *Id*.

On April 3, 2007, Superintendent Van Boening responded to a letter from Plaintiff. (Dkt. #

12, at p. 8, Exh. S (CM/ECF page numbers)). In it, Superintendent Van Boening states: "The

Department of Corrections (DOC) recognizes your right to legally change your name under court

order. Indeed it is noted in our computer records and in your central file that your legal name is

Dawud Halisi Malik. However, the Department of Corrections also has expectations for the use of

your committed name while you are under the jurisdiction of the Department." *Id*. Mr. Van

Boening also reiterates DOC Policy 400.280 and states that Plaintiff "may add [his] legally changed

name after or beneath your committed name using an AKA designation …." *Id*.

---

[3]Plaintiff also received infractions on March 30, 2007 for failing to change the order of his
names on the Inmate Request Form for the purchase from Eastbay and on April 2, 2007 for the
same reason when he filled out an Inmate Request Form for $20.00 for the payment of a telephone
bill. (Dkt. # 12, Exh. Q, pp. 4-5). However, it does not appear that any sanction accompanied these
infractions.

REPORT AND RECOMMENDATION - 7

The following examples of mail, sent and received by Plaintiff, reflect an inconsistent application of DOC Policy 400.280:

**Dkt. # 2:**

Exh. A - Inmate Request to Transfer Funds dated 11/16/06, "Malik/Riggins"
Exh. B - Envelope to Cali, "Malik/Riggins" as return address
Exh. F - Envelope addressed to "Malik/Riggins," response to grievance, 11/29/06
Exh. H - Envelope addressed to "Malik/Riggins," 12/06/06
Exh. J - Envelope from DOC addressed to "Malik/Riggins," response to grievance

**Dkt. # 23, Exh. X:**

Envelopes addressed to "Dawud Halisi Malik", delivered to Plaintiff as follows:

April 2007 from U.S. District Court, Tacoma
April 12, 2007 from Mount Zion Baptist Church
April 16, 2007 from Eastbay, Wausau, Wisconsin
April 17, 2007 from the Attorney General's Office (addressed to "Dawud Halisi Malik a/k/a David Riggins" and marked Legal Mail
April 10, 2007 from U.S. District Court
April 13, 2006 from Attorney General's Office (addressed to "Dawud Halisi Malik a/k/a David Riggins"

**Dkt. # 14** - Correspondence returned to District Court because Court used legal/ religious name only as addressee. Received by Clerk's office May 17, 2007 and included the May 11, 2007 R&R from the Magistrate Judge.

**Dkt. # 17** - Letter dated May 30, 2007 from Attorney General's Office to Clerk advising to use Riggins name first.

**Dkt. # 22:**

Exh. S, p. 4 of 11 - Postage transfer and envelope mailed 6/22/07, "Malik" used first.

Exh. T, p. 5 of 11 - Postage transfer and letter dated 6/22/07 to James Riggins, "Malik" used first.

Exh. U, p. 6 of 11 - Postage transfer and letter dated 6/22/07 to Younkin, "Malik" used first.

Exh. V, p. 7 of 11 - Postage transfer and letter dated 6/22/07 to Cali, "Malik" used first.

REPORT AND RECOMMENDATION - 8

**Dkt. 23**, p. 7 of 7 - copies of mailing labels from Lita Schattauer to "Dawud Malik" at Monroe Correctional Complex and copies of "to" portions of envelopes to Plaintiff at MICC where his legal/religious name is used first and then his committed name.

## IV.  DISCUSSION

**A.     Plaintiff's Claims Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged. *Id.* Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v.*

*Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

## 1.    Plaintiff's Freedom of Religion Claims

Plaintiff alleges that Defendants' refusal to allow him to purchase prayer oils violated his First Amendment right to exercise his religion and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000 (RLUIPA)[4]. (Dkt. # 1, pp. 9-10; Dkt. # 2, pp. 6-7).

### *First Amendment Free Exercise*

Prisoners retain their First Amendment rights, including the right to the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).   Any challenge under the free exercise clause requires plaintiff to demonstrate that the regulation at issue impacts a central religious belief or practice, one that is "mandated by his faith." *Freeman v. Araro*, 125 F.3d 732, 736 (9th Cir. 1997); *See* e.g., *O'Lone*, 482 U.S. at 345 (Jumah service attendance is commanded by the Koran). When a prison regulation infringes upon a prisoner's constitutional rights, it is an unconstitutional violation only if the regulation is not "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone, supra* (applying *Turner* standard to a free exercise of religion claim).   The four factor *Turner* test is utilized to determine if a prison regulation violated a prisoner's First Ament rights. *Estate of Shabazz*, 482 U.S. at 349-50.[5]

In this case, because the undisputed evidence before the Court does not demonstrate that the regulation at issue impacts a central religious belief or practice mandated by Plaintiff's faith, the

---

[4]Although not addressed by the parties in their briefs, the Court has included an analysis of Plaintiff's freedom of religion claim under RLUIPA, as well as the First Amendment Free Exercise Clause because a liberal reading of his pleadings reveals that he has alleged a violation of RLUIPA. (*See* Dkt. # 2, pp. 6-7).

[5]As compared to RLUIPA, a challenge under the free exercise clause imposes a higher standard on plaintiff and a lower standard on defendant.  *See*, e.g. *Greene v. Solano County Jail*, – F.3d —, 2008 WL 170313, *2 (9th Cir. 2008).

1    Court does not reach the *Turner* factors.

2        It has already been established that the DOC  "has a legitimate interest in continued use of

3    an inmate's committed name." *Malik I, supra* at 334.  It has also been established that Plaintiff's

4    free exercise right is violated by a prison regulation that will not permit him to use both his

5    religious and committed name on correspondence and other documents.  *Id*. The question before

6    this Court is whether the prison regulation that requires Plaintiff to list his religious/legal name *after*

7    his committed name unconstitutionally prohibits Plaintiff's First Amendment rights under the free

8    exercise clause.  The Court cannot find in the materials before it that the right to list Plaintiff's

9    religious/legal name in any particular order is "mandated by plaintiff's faith," or that Defendants

10   have interfered with Plaintiff's free exercise right.

11       Plaintiff claims that Defendants Wimberly, Wesner, Cook, and Walston withheld his mail in

12   violation of his "Freedom of Religion . . . by not allowing [him] to purchase his religious prayer

13   oils." (Dkt. # 1, p. 6).  Plaintiff has provided no evidence that he was prohibited from purchasing

14   the prayer oils or that purchase of the prayer oils was essential to the practice of his faith.  The

15   evidence before the Court reflects only that on March 8, 2007, Plaintiff submitted a money transfer

16   form to purchase prayer oil from Save on Scents.  (Dkt. # 12, Exh. P, p. 3).  The evidence reflects

17   that Plaintiff was given a direct order during the FRMT to comply with DOC Policy 408.208, but

18   that the money transfer form was processed on April 4, 2007.  *Id*.

19       As the Ninth Circuit has already found, Plaintiff's constitutional rights are not violated by

20   requiring him to use his committed name in conjunction with his legally changed name pursuant to

21   DOC Policy 400.280.  *Malik I* and *Malik II*, *supra*.  There is no evidence that the practice of

22   Plaintiff's religion mandates that his religious and committed names be placed in a particular order

23   on correspondence and other documents.  Plaintiff has not shown for example, that the use of his

26   REPORT AND RECOMMENDATION - 11

1   original name in conjunction with his religious name keeps him from participating in religious

2   ceremonies, that his access to any religious practice is diminished, or that he is hampered in any

3   way from navigating or enjoying the tenets of his religion.

4       ***RLUIPA***

5       Under RLUIPA, the inmate "bears the initial burden of going forward with evidence to

6   demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden

7   on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).

8   To be considered a "substantial burden," the challenged state action "must impose a significantly

9   great restriction or onus upon such exercise." *Id.* at 995.  If the inmate is able to meet this burden,

10  the state then must prove that "any substantial burden" on the "exercise of his religious beliefs is

11

12  *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of

13  furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000cc-1(a), citing 42

14  U.S.C. § 2000cc-2(b)) (emphasis in original).  Further, RLUIPA "is to be construed broadly in favor

15  of protecting an inmate's right to exercise his religious beliefs." *Id.*

16      Plaintiff has not met his burden of demonstrating that the Defendants' policy which does not

17  permit him to use his religious/legal name first constitutes a substantial burden on the exercise of

18  his religious beliefs.  The evidence reflects that Plaintiff's request for the money transfer to

19  purchase prayer oils was processed approximately one month after Plaintiff submitted his request,

20  even though he had placed his religious name before his committed name on the transfer form in

21  violation of the policy.  (Dkt. # 12, Exh. P, p. 3).

22      There is simply no evidence before the Court of how Plaintiff is impacted in any way in the

23  practice of his religion by having to place his committed name before his religious name on his

24  correspondence and documents.

25

26  REPORT AND RECOMMENDATION - 12

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's religious freedom claims be granted.

**2.      Plaintiff's Freedom of Speech Claim**

Plaintiff alleges that Defendants violated his First Amendment freedom of speech rights when they withheld his mail and refused to process his mail if he did not use his committed name first.  (Dkt. # 1, p. 4; Dkt. # 2, p. 6; Dkt. # 43, p. 2).  Plaintiff also contends that Defendant Van Boening was directly and personally involved when he responded to Plaintiff's letter of March 16, 2007 with "threats of punishment," for non-compliance with DOC's mail policy.  (Dkt. # 12, Exh. S, p. 8 (CM/ECF page numbering)).

Prisoners have a First Amendment right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995)(per curiam).  Prison regulations concerning in-coming mail should be analyzed under the *Turner* factors.  *See Thornburgh v. Abbott*, 490 U.S. 401, 411-13 (1989); *Witherow*, 52, F.3d at 265.  Prison regulations concerning out-going prisoner mail may need to further "important or substantial governmental interests unrelated to the suppression of expression," *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), but they must at least more closely fit the interest served than regulations concerning in-coming mail, *see Thornburgh*, 490 U.S. at 412; *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996); *Witherow*, 52 F.3d at 265.

With regard to mail,  DOC Policy 400.280 in effect February 25, 2002 to February 12, 2007, provided that:

> A.      An offender who obtains an order changing his/her name must use the name under which s/he was committed to the Department during all *official comunications* and in all matters relating to the offender's incarceration or community supervision, including outgoing and incoming mail.  The offender may add the *legally changed name* after the *committed name* using an AKA designation for the *legally changed name*.

(Dkt. # 51, Exh. 1) (emphasis in original).

REPORT AND RECOMMENDATION - 13

DOC Policy 400.280 in effect after February 12, 2007, provides in relevant part:

A.    An offender who obtains an order changing his/her name must use the name under which s/he was committed to the Department for:

* * *

3.    Use of the United States mail.

B.    The offender may add the legally changed name *after* the committed name using an AKA designation for the legally changed name.

(Dkt. # 10, Exh. 1, Attach. A) [emphasis added]

The Ninth Circuit found that Plaintiff's constitutional rights are not violated by requiring him to use his committed name *in conjunction* with his legally changed name.  (*Malik I* and *Malik II*, *supra*).  Here, the Court must ask whether Plaintiff's constitutional rights are being violated by DOC Policy requiring Plaintiff to use his committed name *first* on his mail and documents[6].

Any infringement on prisoners' constitutional rights must be reasonably related to legitimate penological interests.  *Turner v. Safley* 482 U.S. 78, 89 (1987).  This relaxed standard "is necessary if 'prison administrators . . . , and not the courts, are to make the difficult judgments concerning institutional operations.'" *Id*. (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 2532 (1977)).

*Turner* identifies four factors relevant in determining the reasonableness of prison policies: (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) the impact that accommodation of the constitutional right will have on guards, on

_____

[6]The Court notes that the parties did not agree that the Plaintiff would sign his names in any particular order. (*See* Dkt. # 23, attached Settlement Agreement).  The Ninth Circuit held that Plaintiff is entitled to use both his religious and his committed names on correspondence, on legal documents, and in his daily affairs, but did not dictate a particular order of that use. *Malik*, 16 F.3d at 334.

REPORT AND RECOMMENDATION - 14

other inmates, or on the allocation of prison resources; and (4) whether the regulation or policy is an

"exaggerated response" to prison concerns.  482 U.S. at 89-90.  The burden is on the inmate to

show that the challenged regulation is unreasonable under *Turner*.  *Casey v. Lewis*, 4 F.3d 1516,

1520 (9th Cir. 1993) (internal citations omitted).

Prison officials need merely "'put forward'" a legitimate government interest, *Walker v.*

*Sumner*, 917 F.2d 382, 385 (9th Cir. 1990) (quoting *Turner*, 482 U.S. at 89), and provide some

evidence that the interest put forward is the actual reason for the regulation.  *See Swift v. Lewis*, 901

F.2d 730, 732 (9th Cir. 1990); *See also, Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987) (citing

*Turner*, 482 U.S. at 89-91); *see also, Malik v. Brown III*, 71 F.3d at 728-729.

Defendants have put forward no evidence that DOC Policy 400.280 is reasonably related to

a legitimate penological interest.  While the Court also finds no constitutional basis for Plaintiff's

claim that he has a right to use his religious/legal name first, Plaintiff's exhibits (listed above) do

reflect that he sent and received numerous mailings where his religious/legal name was used first.

(*See*, e.g., Dkt. 24, Exh. X).   For example, Plaintiff received at least two mailings from the

Attorney General's Office addressed to "Dawud Halisi Malik a/k/a David Riggins," which were

delivered to him by the prison mail system.  *Id*.

This evidence reflects that the prison mail system does not appear to be hindered by the

order in which Plaintiff places his names on his correspondence, when he includes both his names.

(The Court notes that Plaintiff also includes the DOC number assigned to him on his

correspondence.)  Viewing the evidence in the light most favorable to Plaintiff, the undersigned

concludes that a reasonable factfinder could infer that Defendants have not consistently applied

DOC Policy 400.280 to Plaintiff as it pertains to mail.  This inconsistency suggests that the policy

does not serve a legitimate penological interest insofar as it relates to mail.  Thus, summary

REPORT AND RECOMMENDATION - 15

judgment on the issue of Plaintiff's First Amendment claim pertaining to mail is precluded.  For the reasons stated below, however, the Court finds that Defendants are protected by qualified immunity from Plaintiff's constitutional claim.

### Qualified Immunity

The doctrine of qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgetrald*, 457 U.S. 800, 818 (1982).  While public officials are thus generally protected from civil liability under the doctrine, the defense will fail when their actions violate law that is clearly established because "a reasonably competent public official should know the law governing his conduct."  *Id.*  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show that the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *Conn*, 526 U.S. at 290.  Finally, the court must conclude whether a reasonable officer in these circumstances would have thought her/his conduct violated the alleged right.  *Saucier*, 533 U.S. at 205; *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

Thus, an official is denied qualified immunity only if the law was clearly established and a reasonable official could not have believed the conduct was lawful.  If a reasonable official would not have understood that his actions violated the clearly established right, the official is protected from

REPORT AND RECOMMENDATION - 16

1    liability.  *Harlow*, 457 U.S. at 818; *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9ᵗʰ Cir. 2001);

2    *Saucier,* 533 U.S. at 205.

3        Plaintiff's right to use his religious/legal name in conjunction with his committed name on

4    outgoing mail was clearly established in 1990:

5        Although the test has changed, the results in prisoner religious name cases have
         generally continued to be consistent with earlier cases.  *See Ali v. Dixon*, 912 F.2d 86,
6        90 (4ᵗʰ Cir. 1990) ("Both before and after *Turner*, several courts including our own,
         have expressed approval of the *addition* of a prisoner's new name as a means of
7        accommodating the prisoner's free exercise rights and the prison's interests in
         administrative continuity.").
8

9    *Malik III*, 71 F.3d at 729 (emphasis added).

10       The *Malik III* Court also held that, "[a]llowing a prisoner to put his religious name next to his

11   committed name on outgoing mail is name is an 'obvious, easy' accommodation."  *Id*. (citing *Malik I*,

12   16 F.3d at 334.).  The DOC policy at issue does not prohibit Plaintiff from using his religious/legal

13   name or from using both his names, instead it provides that he may add his legally changed name after

14   his committed name on all prison correspondence and mail using an a/k/a designation for his legally

15   changed name.  This is not inconsistent with the holdings of *Malik I* or *Malik III* nor the cases upon

16   which the Ninth Circuit relied in concluding that "courts have consistently recognized an inmate's

17   First Amendment interest in using [his] new, legal name (at least in conjunction with his committed

18   name)."  *Malik*, 71 F.3d 724.  *See*, *e.g.*, *Salaam v. Lockhart*, 856 F.2d 1120, 1123 (8ᵗʰ Cir. 1988)(a/k/a

19   designation is well-recognized, reasonable alternative to prisons' committed name policies).   The

20   Ninth Circuit also held that the state has a legitimate interest in continued use of an inmate's

21   committed name.  *Malik I*, 16 F.3d at 334.

22

23       While the evidence suggests that prison officials may have inconsistently applied DOC Policy

24   400.280 to Plaintiff relating to his mail, there is no evidence that they acted unreasonably.  Plaintiff

25   does not have a constitutional right to place his names in any particular order on his correspondence.

26   REPORT AND RECOMMENDATION - 17

Further, although the Ninth Circuit left open the question of the particular order that Plaintiff was to use when placing both his names on correspondence, DOC Policy 400.280's requirement that Plaintiff use the a/k/a designation is consistent with cases relied on by Ninth Circuit in *Malik I and III*.  It is also consistent with the Ninth Circuit's recognition that the state's interest in the continued use of an inmate's committed name serves a legitimate penological objective.  *Malik I*, 16 F.3d at 334.

Accordingly, the undersigned concludes that prison officials in these circumstances could reasonably believe that they were not violating Plaintiff's rights by insisting that Plaintiff comply with DOC Policy to include his religious/legal name after his committed name on his mail.

Accordingly, the undersigned recommends that Defendants Wimberly, Wesner, Cook, Walston and Van Boening are entitled to qualified immunity on Plaintiff's claim that they refused to process his mail in violation of his First Amendment freedom of speech claims.

### 3.     Plaintiff's Eighth Amendment Claim

Plaintiff alleges that he was subjected to "psychological torture and intimidation" by Defendants Wimberly, Wesner, Cook, and Walston to prevent him from using the U.S. Mail.  (Dkt. # 1, p. 5).  Plaintiff also alleges that Defendants subjected him to cruel and unusual punishment when they threatened and ordered him during the FRMT to follow a directive they knew did not apply to him.  (Dkt. # 2, p. 4).

The Eighth Amendment protects prisoners from cruel and unusual punishment.  It is well established that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Liability under the Eighth Amendment is imposed only if the inmate can establish that he was subjected to "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."

REPORT AND RECOMMENDATION - 18

1   *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

2           A prison official violates the Eighth Amendment only when two requirements are met: (1)

3   the inmate must show that he is incarcerated under conditions posing a substantial risk of serious

4   harm; and (2) the prison official must have a "sufficiently culpable state of mind."  *Farmer v.*

5   *Brennan*, 511 U.S. 825 (1994).  The Eighth Amendment standard requires proof of both an

6   objective and a subjective component. First, the deprivation alleged by the inmate must be,

7   objectively, "sufficiently serious".  *Farmer,* 511 U.S. at 834.  Second, the prison officials must

8   know of and must deliberately disregard the risk of harm to the inmate. *Id*. at 842. If one of the

9   components is not established, the court need not inquire as to the existence of the other. *Helling*,

10  509 U.S. at 35. In proving the objective component of the Eighth Amendment standard, an inmate

11  must establish that there was both some degree of actual or potential injury, and that "society

12  considers the [acts] that the plaintiff complains of to be so grave that it violates contemporary

13  standards of decency to expose anyone unwillingly" to those acts. *Helling*, 509 U.S. at 36; *see also*

14  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

15          A prison condition only constitutes "unnecessary and wanton infliction of pain" when the

16  condition violates "evolving standards of decency" or is "so totally without penological justification

17  that it results in gratuitous infliction of suffering." *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.

18  1982) (citations omitted).

19          As discussed above, the undisputed evidence reflects that Plaintiff was not denied the ability

20  to use his religious/legal names.  The record reflects that Plaintiff was required only to list his

21  committed name and then his legally changed name pursuant to DOC Policy 400.280.  Plaintiff's

22  claim on this ground does not rise to the requisite standard to show a violation of his right to be free

23  of cruel and unusual punishment under the Eighth Amendment.

26  REPORT AND RECOMMENDATION - 19

In addition, there is no evidence before the Court that Plaintiff has suffered any physical injury.  Under the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff alleges only "psychological and emotional injuries …."  (Dkt. # 1, p. 6).

The Court finds that Defendants' motion for summary judgment on this ground should be granted.

### 4.    Plaintiff's Due Process and Equal Protection Claim

Plaintiff also alleges that Defendant Wimberly, Wesner, Cook and Walston violated his Fifth and Fourteenth Amendment due process rights when they withheld his mail. (Dkt. # 4, p. 9-10).   To establish a violation of substantive due process a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.  However, where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims.  *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996)(citations, internal quotations and brackets omitted); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 841-42 (1998).  Here, Plaintiff's challenge to Defendants' conduct relating to the processing of his mail has already been analyzed by the Court within the context of the protections of the First Amendment.  Thus, a more generalized due process analysis is not necessary.

The Equal Protection Clause requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  The Equal Protection

REPORT AND RECOMMENDATION - 20

Clause entitles each prisoner to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972)(per curiam).

Plaintiff alleges that Defendants violated his Fourteenth Amendment equal protection rights to practice his religion when they withheld his order to purchase scented prayer oil. (Dkt. # 3, p. 8). As noted above, the evidence reflects that Plaintiff's request to purchase the prayer oils was processed. There is also no evidence before the Court that Plaintiff was treated differently than prisoners of other faiths.

Accordingly, the undersigned recommends that Plaintiff's due process and equal protection claims be dismissed.

### 5.    Claims Against Defendants Clarke and Van Boening

Defendants Clarke and Van Boening contend that Plaintiff's claims against them should be dismissed because Plaintiff's allegations against them are based solely on a theory of respondeat superior. *Monell v. New York City Dept. Of Social Service*, 436 U.S. 658, 694 n. 58 (1978); *Padway v. Palches*, 665 F.2d 965, 967 (9th Cir. 1982).

As discussed above, Plaintiff has failed to demonstrate a violation of his constitutional rights except as to his First Amendment mail claim and as to that claim, the Court is recommending that the Defendants, including Defendant Van Boening are entitled to qualified immunity. With regard to his claims against Defendant Clarke, Plaintiff concedes that they may be dismissed as his primary purpose in including Defendant Clarke in this action was "to make him aware of the unconstitutional acts of his subordinates." (Dkt. # 43, p. 4).

Accordingly, the Court recommends that Defendant Clarke is entitled to summary judgment on this basis.

REPORT AND RECOMMENDATION - 21

**B.    Plaintiff's "State Law" Claims**

Defendants argue that Plaintiff's state law contract claims should be dismissed as Plaintiff cannot show a violation of the 1996 settlement agreement that amounts to a claim of breach of contract. (Dkt. # 41, p. 14). Although Plaintiff includes an allegation that this Court has supplemental jurisdiction over his "state law tort claims under 28 U.S.C. § 1367," he includes no factual allegations or state law claims in his Complaint. There is no allegation that Defendants have breached the 1996 settlement agreement. (Dkt. # 1, p. 2).

In their motion to dismiss (Dkt. # 29), Defendants argued that the Court lacked subject matter jurisdiction because Plaintiff's claims are based on violations of the settlement agreement reached between the parties after *Malik I*, relief for which lies solely in state court. *Id*. Plaintiff initially argued that Defendants breached that settlement agreement when he pursued temporary injunctive relief, but later argued that the settlement agreement was "secondary" to the violation of his federal rights when defending against Defendants' motion to dismiss. This Court recommended denial of Defendants' motion to dismiss on the grounds that Plaintiff's lawsuit is based on allegations of violations of his constitutional rights, not contractual rights. (Dkt. # 39).

Accordingly, the Court recommends that Defendants' motion for summary judgment be granted as the Plaintiff did not assert or factually allege the violation of any state laws.

**V.  CONCLUSION**

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment (Dkt. 41) be **GRANTED.**  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also*

REPORT AND RECOMMENDATION - 22

Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

72(b), the Clerk is directed to set the matter for consideration on **April 18, 2008**, as noted in the

caption.

DATED this 18th   day of March, 2008.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23

**APPENDIX**

**Citations to Record - Defendant's Motion for Summary Judgment (Dkt. # 41)**

P. 2, Line 19    Parties' settlement agreement attached as Exhibit 1 to Defendants' Motion to Dismiss (Dkt. # 29) - the settlement agreement was not attached to that motion; Plaintiff provided a copy of the settlement agreement to the Court with his letter to the Court Clerk on June 28, 2007.  (Dkt.# 23, pp. 3-5 (CM/ECF page numbering))

P. 4, Line 1     Plaintiff's Exhibit N is included in Dkt. # 5, p. 8 (CM/ECF page numbering)

P.3, Line 15     Plaintiff's Exhibit C is attached to Dkt. # 2

P. 3, Line 22    Plaintiff's Exhibit O (Money Transfer Request) is found at Dkt. # 5, p. 14 (CM/ECF page numbering)

P. 3, Line 25    Plaintiff's Exhibit N (March 7, 2007 Letter to Eastbay) is found in Dkt. # 5, Page 11 (CM/ECF page numbering)

P. 4, Line 1     Plaintiff's Exhibit N (Note from Defendant Wimberly) is found in Dkt. # 5, p. 13 (CM/ECF page numbering)

P. 4, Line 21-
P. 5 - Line 2    Plaintiff's Exhibit S - April 3, 2007 Letter from Superintendent Van Boening, is found in Dkt. # 12, Exhibit, p. 8 (CM/ECF page numbering)


**Citations to Record - Plaintiff's Response to Motion for Summary Judgment (Dkt. # 43)**

P. 3, §§ 7, 8    Plaintiff refers to Exhibits Q & R - these exhibits can be found in Dkt. # 12, Exhibit, pp 4-7 (CM/ECF page numbers).

REPORT AND RECOMMENDATION - 24