UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAWUD HALISI MALIK, f/k/a DAVID
RIGGINS,

        Plaintiff,

      v.

HAROLD CLARKE, *et al.,*

        Defendants.

Case No. C07-5160RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR: April 10, 2009**

     This matter comes before the Court on the re-referral from Judge Robert J. Bryan with directions that the Defendants be provided the opportunity to further develop the record with regard to a *Turner* analysis of DOC Policy 400.280. In addition, the undersigned is to reconsider whether the Plaintiff asserted a claim against Defendant Van Boening and finally, whether the Plaintiff's request for declaratory or injunctive relief is appropriate based on the remaining claim addressed on this re-referral.

     Pending before this Court now is Defendants' Motion for Summary Judgment on Plaintiff's First Amendment Freedom of Speech Claim. Dkt. # 70. Plaintiff filed his Response and Declaration ( Dkt. # 77 and 74, respectively), and Defendants filed their reply (Dkt. # 78). Having carefully reviewed the pleadings and viewing the evidence in the light most favorable to Plaintiff, the undersigned recommends that Defendants' motion for summary judgment be granted.

REPORT AND RECOMMENDATION - 1

# I. BACKGROUND

Plaintiff was committed to the custody of DOC under the name David W. Riggins. *Malik v. Brown*, 16 F.3d 330 (9th Cir. 1994) (Malik I), *mandate recalled*, 65 F.3d 148 (9th Cir. 1995) (Malik II), *appeal after remand*, 71 F.3d 724 (9th Cir. 1995) (Malik III). While incarcerated Plaintiff converted to Islam and in January 1978 Plaintiff changed his name to Dawud Halisi Malik. *Id.* Plaintiff previously sued various prison officials[1] alleging that they violated his statutory and constitutional rights by refusing to process his mail and documents when he used his religious name. *Malik, supra.* In reversing the District Court's grant of summary judgment in favor of the defendants in that case, the Ninth Circuit ruled as follows:

> We agree that the state has a legitimate interest in continued use of an inmate's committed name. But we see no legitimate penological interest in preventing Malik from using both his religious and his committed names.

16 F.3d at 334.

Subsequently, in September 1996, the parties in *Malik v. Brown*, No. C90-1366C, entered into a settlement agreement. Dkt. # 74, Exh. 1.

The only claim remaining against all defendants at this time is Plaintiff's claim that his First Amendment freedom of speech right has been violated. Specifically, the Plaintiff asserts that application of DOC Policy 400.200 violates his constitutional right to send and receive mail.

As it has already been established that Mr. Malik's constitutional rights are not violated by requiring him to use his committed name in *conjunction with* his legally changed name, the only issue here is whether Mr. Malik's constitutional rights are being violated by a DOC policy requiring him to use his committed name *first* on his incoming and outgoing mail.

---

[1]Carol L. Moses, Kathy Kaatz, Sue Kinsinger, Mark Crewson, Virginia Carter, Joan Smith, John Tice, Dick Frank, Nancy Hill, Monica Sukert, Richard Rooney, John Fritzpatrick, Marie Norman, S. Gisenoff, Lt. Schouviller, and Chase Riveland.

## II. SUMMARY JUDGMENT STANDARD

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In examining Defendants' motion, the Court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

# III.  UNDISPUTED FACTS

The facts, for purposes of this motion, are derived from the Court's review of Plaintiff's pleadings and exhibits.[2]

DOC Policy 400.280, in effect on November 16, 2006, the first date noted in Plaintiff's Complaint, provides in relevant part:

> A.    An offender who obtains an order changing his/her name must use the name under which s/he was committed to the Department during all *official comunications* and in all matters relating to the offender's incarceration or community supervision, including outgoing and incoming mail.  The offender may add the *legally changed name* after the *committed name* using an AKA designation for the *legally changed name*.

(Dkt. # 51, Exh. 1) (emphasis in original).  This version was in effect from February 25, 2002 until February 12, 2007.  *Id*.

Policy 400.280 was revised on February 12, 2007.  *Id*.  There was no change in the policy regarding the order in which names must be used:

> A.    An offender who obtains an order changing his/her name must use the name under which s/he was committed to the Department for:
>
> 1.    Any written or verbal communication between the offender and staff, contract staff, and volunteers,
>
> 2.    In all matters relating to the offender's incarceration or community supervision, and
>
> 3.    Use of the United States mail.
>
> B.    The offender may add the legally changed name *after* the committed name using an AKA designation for the legally changed name.

(Dkt. # 10, Exh. 1, Attach. A) [emphasis added].

## A.    Outgoing Mail

---

[2]For ease of reference, citations used are the same as used by the Court in its previous Report and Recommendation (Dkt. # 52), except where otherwise specifically noted.

On November 16, 2006, Mr. Malik submitted an "Inmate Request to Transfer Funds" to Defendant Wimberly to process funds for the payment of a phone bill. (Dkt. # 2, Exh. A). Defendant Wimberly returned the form to him because Mr. Malik failed to put his committed name on the envelope. Dkt. # 1, p. 3, Dkt. # 2, Exh. B.[3] Exhibit B reflects that Mr. Malik listed his religious name, followed by his prisoner number, a slash and then his committed name. *Id*., Exh. B. When he complained that his religious name was not being "acknowledged and recognized," Defendant Wimberly explained that DOC Policy 400.280 requires that the committed name be listed first, and then the legal name may be listed as well. Dkt. # 2, Exh. C.

On November 17, 2006, Mr. Malik filed a grievance against Defendant Wimberly for his refusal to process Plaintiff's outgoing mail to friends. Dkt. # 2-2, pp. 10, 14; Exh. E; Exh. G. The Grievance Coordinator responded on December 5, 2006, stating: "Per 400.280 … you must use the committed name however you may add the legally changed name after the committed name using AKA designation for the legally changed name. (Your counselor is correct.)." *Id*., Exh. G.[4]

Mr. Malik pursued his grievance to the next level because he was being required to "have [his] committed name first," in order for his mail to be processed. *Id.*, Exh. I.

On March 8, 2007, Mr. Malik submitted an Inmate Request to Transfer Funds under the name of Dawud Malik/D. Riggins for the purchase of athletic shoes from Eastbay the Athletic SportSource. Dkt. # 5, Exh. N., p. 14 (CM/ECF pagination). On March 29, 2007, Defendant Wimberly sent Mr. Malik a note asking him to "please comply with the policy so we can move your request [to order shoes from Eastbay] forward. Example 'Riggins, David AKA Dawud Malik.'"

---

[3]Plaintiff filed a Complaint (Dkt. # 1) and Memorandum in Support with Exhibits A-L (Dkt. # 2). Reference to page numbers of Plaintiff's Complaint are those used by Plaintiff.

[4]The envelope containing the grievance counselor's response was addressed to "Malik/Riggins." Dkt. # 2-2, p. 12.

Dkt. # 5, Exh. N, p. 13 (CM/ECF pagination). Mr. Malik filled out the request, again stating and signing his name as "Dawud Malik/D. Riggins," and on the mailing envelope stating his name as "Dawud H. Malik a/k/a D. Riggins." *Id*., Exh. N., p. 18. Defendant Wimberly noted that this was in violation of DOC Policy 400.280, Section B and that this was Mr. Malik's second infraction. *Id*., p. 17. The request to transfer funds was processed on April 5, 2007. (*Id*., Exh. P, p. 2).

When Mr. Malik corresponded with Eastbay on March 7, 2007, regarding his purchase of the athletic shoes, he included only his religious/legal name on his cover letter. Dkt. # 5, Exh. N, p. 11 (CM/ECF pagination).

On March 9, 2007, Mr. Malik sent a kite to his counselor, Defendant Wimberly, stating that "per court order and DOC agreement that both names be attached to institutional interaction and such. Will you send out whatever requests that has both names on my kites, mail, etc. I hope it will not be necessary to initiate another lawsuit by you denying my FIRST AMENDMENT constitutional right." Dkt. # 2, Exh. K. On March 12, 2007, Mr. Malik was told he will be placed on call-out on March 16, 2007 for a Facility Risk Management Team Meeting (FRMT). Dkt. # 2, Exh. K.

On March 16, 2007, Mr. Malik attended the FRMT where Defendants Wimberly and Wesner told him that if he did not use his committed name first on his mail, his mail would not be sent our or delivered to him. Dkt. # 1, p. 8 (CM/ECF page numbers).

On March 16, 2007, Mr. Malik sent a letter to Defendant Van Boening complaining that his mail was not being sent out. Dkt. # 2, Exh. L. In that letter, he also complained that the FRMT, held with all the counselors in C-Unit to address the issue of the use of his names, was held for the sole purpose to intimidate him. *Id*.

On April 3, 2007, Superintendent Van Boening responded to a letter from Mr. Malik,

REPORT AND RECOMMENDATION - 6

stating: "The Department of Corrections (DOC) recognizes your right to legally change your name under court order. Indeed it is noted in our computer records and in your central file that your legal name is Dawud Halisi Malik. However, the Department of Corrections also has expectations for the use of your committed name while you are under the jurisdiction of the Department." Dkt. # 12, p. 8, Exh. S (CM/ECF page numbers). Mr. Van Boening also reiterates DOC Policy 400.280 and states that Plaintiff "may add [his] legally changed name after or beneath your committed name using an AKA designation ...." *Id.*

**B.    Incoming Mail**

Mr. Malik alleges that Defendants have rejected his incoming mail (including some mail from this Court) because it was addressed to his religious name and not his committed name. Dkt. # 77, p. 7. On May 17, 2007, this Court's mailing of its Report and Recommendation was returned as undeliverable because it was addressed to Mr. Malik using his religious name instead of his convicted name. Dkt. # 14.

The Court is also aware of a number of instances of incoming and outgoing mail where Mr. Malik's committed name was not listed first. A summary of these instances is set forth in the attached Appendix A.

# IV. DISCUSSION

**A.    First Amendment Freedom of Speech Claim.**[5]

Policy 400.280, in effect at the time of the events raised in Mr. Malik's complaint, requires that "any offender who obtains an order changing his/her name must use the name under which s/he was committed to the Department" on all "outgoing and incoming mail."  The offender may add the *legally changed name* after the *committed name* using an AKA designated for the *legally changed name*.[6]

Prisoners have a First Amendment right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995)(per curiam).  Prison regulations concerning in-coming mail should be analyzed under the *Turner* factors.  *See Thornburgh v. Abbott*, 490 U.S. 401, 411-13 (1989) (citing *Turner v. Safley* 482 U.S. 78, 89 (1987); *Witherow*, 52, F.3d at 265.  Prison regulations concerning out-going prisoner mail must further "important or substantial governmental interests unrelated to the suppression of expression," *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), but there must be a closer fit between the interest served and the regulations concerning out-going mail, *see Thornburgh*, 490 U.S. at 412; *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996); *Witherow*, 52 F.3d at 265.

Any infringement on prisoners' constitutional rights must be reasonably related to legitimate penological interests.  *Turner,* 482 U.S. at 89.  This relaxed standard "is necessary if 'prison administrators . . . , and not the courts, are to make the difficult judgments concerning institutional

_____

[5]In his Response, Mr. Malik refers to his First Amendment rights to freedom of speech, freedom of religion, freedom of expression, and to send and receive mail while incarcerated. Dkt. # 77, p. 10.  The only constitutional claim remaining in this case on re-referral is Plaintiff's First Amendment freedom of speech claim.  Dkt. # 56.

[6]Dkt. # 51, Exh. 1, Attach. A.

REPORT AND RECOMMENDATION - 8

operations.'" *Id.* (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 2532 (1977)).

*Turner* identifies four factors relevant in determining the reasonableness of prison policies: (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) the impact that accommodation of the constitutional right will have on guards, on other inmates, and on the allocation of prison resources; and (4) whether there are ready alternatives to the prison regulations - the absence of such ready alternatives suggests the regulation is reasonable while their existence may be evidence of the opposite. 482 U.S. at 90-91. The burden is on the inmate to show that the challenged regulation is unreasonable. *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993) (internal citations omitted).

The Court analyzes Mr. Malik's incoming and outgoing mail claims separately, turning first to Policy 400.280's requirement that he use his committed name first on his incoming mail.

**1.      Turner Analysis - Incoming Mail**

In his Declaration, Richard Morgan, Director of Prisons Division, states that DOC Policy 400.280 requires the use of an offender's committed name first on all incoming mail. Dkt. # 70-2, p. 2. When processing mail as a system for approximately18,000 offenders, Mr. Morgan states it is imperative to require clear identification for the efficient tracking and management of mail. *Id.* Precise identification serves both the offender and the State in that it aides in avoiding mis-routing and return delivery if rejected or returned to sender for other reasons. *Id.*    Staff are trained to identify inmates in prison facilities by viewing their identification badges which use their committed name. *Id.*  In the mail room, staff typically scan incoming mail and look for the first line to route mail to the appropriate offender. *Id.*  Having the committed name as the first name

expedites the delivery of thousands of pieces of mail that are processed each day because that is the name used in all areas of the prison. *Id.*

Defendants argue that DOC Policy 400.280 does not limit an inmate's ability to receive mail. Dkt. # 70, p. 10. An inmate whose mail is rejected because it does not contain his committed name need merely notify the sender how to properly address the mail. *Id.* The sender can then repackage the previously rejected mail in an envelope that contains the inmate's committed name first and resend it to the inmate. *Id.*

Defendants contend that facilitating the delivery of mail that does not use an offender's committed name first would compromise order and administration concerns in the institution. Dkt. # 70, p. 10. The use of an offender's committed name standardizes the delivery of mail and ensures that staff, who are processing thousands of pieces of mail a day, can facilitate the prompt delivery of mail.

Finally, Defendants argue that there are no ready alternatives to the regulation. Dkt. # 70, p. 11. Staff would be required to compare each incoming piece of mail with a list of all potential names an offender could be using, i.e. committed name, legal name, initials, initials combined with a legal last name, etc., before delivering each piece of mail to each offender in the 18,000 person population. *Id.* Defendants argue that this would severely undermine staff's ability to process mail in a timely manner and could infringe on offenders' rights by delaying the delivery of mail. *Id.*

Mr. Malik argues that there is no valid, rational connection between requiring him to list his committed name before his religious name. Dkt. # 77, p. 12. He asserts there will be no mistake about his identity so long as he lists both his names along with his DOC identification number. *Id.* Mr. Malik states that while he could list his religious name second "he shouldn't have to because he already has to list both names to satisfy prison concerns." Dkt. # 77, p. 12. Whether his religious

name is listed first or second, Mr. Malik insists that there would be no impact on guards, other inmates and prison resources because the process for verifying his identity would be the same. Dkt. # 77, p. 12.

Mr. Malik also argues that the impact on prison resources is almost non-existent because when both his names, coupled with his DOC identification number is used, the guards should not have any difficulty identifying him. Dkt. # 77, p. 12. In this regard, the record reflects a number of occasions when Mr. Malik has received mail that was addressed to him with only his religious name or where his religious name was listed *first* in the address. *See e.g*., Appendix A.

Prison officials need merely "'put forward'" a legitimate government interest, *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990) (quoting *Turner*, 482 U.S. at 89), and provide some evidence that the interest put forward is the actual reason for the regulation. *See Swift v. Lewis*, 901 F.2d 730, 732 (9th Cir. 1990); *See also, Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987) (citing *Turner*, 482 U.S. at 89-91); *see also, Malik v. Brown II*, 71 F.3d at 728-729. The burden is on the inmate to show that the challenged regulation is unreasonable. *Casey*, 4 F.3d at 1520.

Although an inmate has a constitutional right to use his or her legal name, it is well established that the DOC has a legitimate penological interest in the use of the inmate's committed name. *Malik I*, 16 F.3d at 334. Those legitimate penological interests are "order, security and administrative efficiency." *Id*. citing *Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir. 1987).

Mr. Malik argues that any valid, rational connection behind the DOC policy has been undermined or that Defendants have waived the requirement that inmates place their committed names first. A review of Plaintiff's exhibits reflect that he sent and received mailings where his religious/legal name was used first. (*See*, e.g., Dkt. 24, Exh. X). For example, Plaintiff received at least two mailings from the Attorney General's Office addressed to "Dawud Halisi Malik a/k/a

David Riggins," which were delivered to him by the prison mail system. *Id*.

Defendants do not dispute that there were occasions when the policy has been inconsistently applied. However, they argue that the evidence does not demonstrate that the policy was inconsistently applied by any one of the Defendants in this case. Moreover, the evidence before the Court also reflects that Mr. Malik was regularly and consistently instructed to follow the proper procedure to use his committed name first on his mail and documents. *See, e.g.*, Dkt. # 2, Exhs. C and G; Dkt. # 5, Exh. N, p. 10; Exh. 13, Exh. R.

Viewing the evidence before it in the light most favorable to Mr. Malik, the undersigned concludes that the policy as it applies to incoming mail is reasonable. The undisputed evidence reflects that DOC's policy of rejecting and withholding mail without the inmate's committed name used first, as set forth in Policy Directive 400.280, is based on the legitimate penological interests of standardizing identification and assisting in the administration of mail delivery. Requiring the committed name first on all incoming mail facilitates the identification of inmates as they are shown on the records of the DOC or elsewhere within the prison. Therefore, a valid and rational connection exists between the policy and DOC's interests underlying the policy.

The evidence also reflects that inmates at DOC institutions, including Mr. Malik, have alternative means to exercise their First Amendment Right to send and receive mail. Mr. Malik admits that he could just as easily list his religious name second but "he shouldn't have to." Dkt. # 77, p. 12. Clearly then, the regulation as now written does not restrict the Plaintiff's ability to receive mail.

The record also reflects that there are no reasonable *de minimis* cost alternatives as the accommodation proposed would undermine staff's ability to process mail in a timely manner and could infringe on other offenders' rights by delaying the delivery of mail within the facility.

Mr. Malik also argues that Defendants have "acted sadistically and maliciously by applying the 2002 policy to him retroactively altering his Agreement to now require him to list his *committed name* before his *religious name* on his mail." Dkt. # 77, pp. 9, 13.   Mr. Malik's belief that Defendants were acting from an unlawful motive, without evidence supporting that belief, however, is no more than speculation or unfounded accusation. *Carmen*, 237 F.3d at 1028.  As noted above, DOC Policy 400.280 was in effect during the time periods at issue in Plaintiff's complaint.[7]  And, contrary to Mr. Malik's belief, the Settlement Agreement contained no express agreement between the parties as to the order in which Plaintiff would be permitted to use his names in his mail and documents. *See* Dkt. # 74, Exh. 1 (Settlement Agreement).[8]

Thus, the Court finds that the DOC has legitimate penological interests in requiring Plaintiff to use his committed name *first* on his incoming mail based on its need to standardize all identification and to avoid confusion.

## 2.    Outgoing Mail

When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a "closer fit between the regulation and the purpose it serves." *Abbott*, 490 U.S. at 412.  However, the regulation need not satisfy a "least restrictive means" test. *Id*. at 411-13 (explaining *Procunier v. Martinez*).

DOC Policy 400.280 also requires that an offender use his committed name first on all

---

[7]DOC Policy 400.280, was in effect on November 16, 2006, the first date noted in Plaintiff's complaint.  This version was in effect from February 25, 2002 until February 12, 2007.  Dkt. # 52, Exh. 1.

[8]The Ninth Circuit held that Plaintiff is entitled to use both his religious and his committed names on correspondence, on legal documents, and in his daily affairs, but did not dictate a particular order of that use. *Malik*, 16 F.3d at 334.

outgoing mail. Dkt. # 10, Exh. 1, Attach. A; Dkt. # 70-2, p. 2. Defendants argue that a legitimate penological interest for this requirement exists in that use of an offender's committed name first on outgoing mail protects the public and the prison's internal security because it alleviates an offender's ability to engage in inappropriate or illegal behavior by disguising his or her identity. Mr. Morgan states in his declaration that the requirement allows mail staff to ensure that offenders are not misrepresenting themselves to the public, as most citizens are accustomed to looking at the first line of the envelope. Dkt. # 70-2, p. 3. As the mail is generated within an all criminal population, Mr. Morgan asserts that it is foreseeable that communication from and to offenders can be for the purpose of conducting criminal acts through the mail. *Id.* Therefore, requiring that the committed name of the offender be placed first assists the DOC in deterring criminal intentions via the mail, and is useful for investigative purposes. *Id.* Additionally, because the primary concern of DOC is the safety of communities, Mr. Morgan states that it is important to ensure the recipient of mail from offenders can address complaints of inappropriate mail. Thus, the sender must be readily identifiable so he or she can be held accountable. *Id.*

The parties' arguments as to the remaining *Turner* factors are the same for outgoing mail as they were for incoming mail. That is, Defendants argue that the regulation does not restrict his ability to send out mail as his alternative means to exercise his First Amendment right is to simply place his committed name first followed by his religious name; that changing the regulation as proposed by Mr. Malik would compromise order, administration and security in the institution, and that there are no ready alternatives at a *de minimus* cost. Dkt. # 70, pp. 10-11.

Defendants also argue that if mail is permitted to leave an institution that does not have the committed name of the offender first in the return address label, it could endanger the public because an offender could engage in inappropriate or illegal behavior by disguising his or her

identity.  *Id*.  Such a "disguising of identity" could allow an offender to engage in unlawful activity perpetrated against an unsuspecting member of the public who does not know that the offender is using a new name.  *Id*.

Mr. Malik argues that there can be no reasonable mistakes about his identity and it is not a misrepresentation to the public when he lists both his names, along with his DOC identification number on his mail.  Dkt. # 77, p. 12.

Courts are to accord great deference to prison officials' assessments of their interests.  *See, e.g., Turner* , 482 U.S. at 84-85, 89; *Estate of Shabazz*, 482 U.S. at 349.  Nevertheless, prison officials must "put forward" a legitimate governmental interest to justify their regulation, *Turner*, 482 U.S. at 89, and must provide evidence that the interest proffered is the reason why the regulation was adopted or enforced.  *Swift v. Lewis*, 901 F.2d 730, 732 (9th Cir. 1990) ("prison officials must at least produce some evidence that their policies are based on legitimate penological justifications").  Prison authorities cannot rely on general or conclusory assertions to support their policies.  *Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990).  Rather, they must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the polices are reasonably related to the furtherance of the identified interests.  *Id*.  An evidentiary showing is required as to each point.  *Id*.

Here, Defendants argue that it is foreseeable that communication from and to offenders can be for the purpose of conducting criminal acts through the mail and that "[r]equiring the committed name of the offender assists the Department of Corrections in deterring criminal intentions via the mail, and is useful for investigative purposes."  However, Defendants provide no evidence of how this would be accomplished as the policy requires use of both names and the issue here is which name is used first.  If Mr. Malik were to use his legal name first and his committed name, the DOC

1  still has his committed name that they can use for investigative purposes.

2       Defendants argument is conclusory in that they have provided no reasonable examples to

3  justify or explain how their policy is meant to help achieve the stated goal of "deterring criminal

4  intentions." Defendants also state that the primary concern of the Department is the safety of

5  communities and to ensure that the recipient of mail from offenders can address complaints of

6  inappropriate mail so that the sender may be held accountable. Dkt. # 70-2, p. 3. However, it is

7  unclear how requiring the use of the committed name first before the legal name accomplishes this

8  goal in a more effective way than by allowing the prisoner to use his legal name first followed by

9  his committed name. Either way, the person receiving the mail will know who sent the mail, as will

10  the prison.

11       Based on the record, the undersigned recommends that Defendants' motion for summary

12  judgment on whether Policy 400.280's requirement that he use his committed name first on his

13  outgoing mail burdened his ability to exercise his First Amendment rights be denied.

15  **B.      The Doctrine of Res Judicata Does Not Bar Litigation of Plaintiff's Claim**

16       Mr. Malik argues that the doctrine of *res judicata* bars litigation of his First Amendment

17  claim. Dkt. # 77, p. 9. Mr. Malik contends that the settlement agreement entered into following

18  *Malik I, II and III, supra*, established his right to use his committed name and his religious name,

19  interchangeably, as his religious name was listed first throughout the agreement multiple times. *Id*.;

20  *See* Dkt. # 74, Exh. 1 (Settlement Agreement).

21       The doctrine of *res judicata* serves to bar a claim where there is an identity of claims, a final

22  judgment on the merits and an identity of parties. *Western Radio Servs. Co., Inc. v. Glickman*, 123

23  F.3d 1189, 1192 (9th Cir. 1997).

24       The DOC policy at issue in the settlement agreement involved DOC prohibiting inmates

26  REPORT AND RECOMMENDATION - 16

from using their religious name.  Dkt. # 77, p. 2.  The DOC policy at issue here requires that inmates must use their committed names before their religious names.  In addition, the defendants in the prior *Malik* cases (see footnote 2 above) are not the same defendants as in this action.

In the absence of identical claims and identical parties, the doctrine of *res judicata* does not apply.

## C.    Qualified Immunity

Defendants urge that they are nonetheless entitled to qualified immunity.  As the Court has determined that Mr. Malik has failed to raise a genuine issue of material fact concerning his claim that Defendants' regulation infringed his First Amendment rights as to his incoming mail, the Court need not reach the issue of whether Defendants are protected by qualified immunity.  As to Mr. Malik's outgoing mail, the Court turns to the questions of whether his asserted right - to place his religious name first on his mail - was clearly established at the time of the alleged misconduct.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, --- S.Ct.—, 2009 WL 128768, * 6 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  *Pearson*, at *6.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Groh v. Ramirez*, 540 U.S. 551, 567 (2004).

In resolving a government official's qualified immunity claim, a court need not first

determine whether the facts alleged or shown by the plaintiff make out a violation of a

constitutional right. *Pearson* at *12-13.

Qualified immunity is applicable unless the official's conduct violated a clearly established

constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The contours of the right

must be sufficiently clear that a reasonable official would understand that what he is doing violates

the right. *Id*. at 648. The qualified immunity doctrine "gives ample room for mistaken judgments"

by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v.*

*Bryant*, 502 U.S. 224, 229 (1991). Plaintiff bears the burden of proving that the specific right

claimed was clearly established at the time of the alleged misconduct. *Davis v. Scherer*, 468 U.S.

183, 197 (1984).

In this case, the inquiry is whether Mr. Malik's right to place his legal name *first* on his

outgoing mail was clearly established at the time of the alleged violations.

At the time of *Malik III*, Plaintiff's right to use his religious name *in conjunction with* his

committed name on outgoing mail had been clearly established since 1990.[9] DOC Policy 400.280

does not prohibit Mr. Malik from using his religious name or from using both his names, instead it

provides that he may add his legally changed name after his committed name on all prison

correspondence and mail using an a/k/a designation for his legally changed name. This is not

inconsistent with the holdings of *Malik I* or *Malik III* nor the cases upon which the Ninth Circuit

relied in concluding that "courts have consistently recognized an inmate's First Amendment interest

_____

[9]Although the test has changed, the results in prisoner religious name cases have generally
continued to be consistent with earlier cases. *See Ali v. Dixon*, 912 F.2d 86, 90 (4th Cir. 1990) ("Both
before and after *Turner*, several courts including our own, have expressed approval of the *addition*
of a prisoner's new name as a means of accommodating the prisoner's free exercise rights and the
prison's interests in administrative continuity."). *Malik III*, 71 F.3d at 729 (emphasis added)
("[a]llowing a prisoner to put his religious name next to his committed name on outgoing mail is
name is an 'obvious, easy' accommodation.")(citing *Malik I*, 16 F.3d at 334.).

REPORT AND RECOMMENDATION - 18

in using [his] new, legal name (at least in conjunction with his committed name)." *Malik*, 71 F.3d 724. *See*, *e.g.*, *Salaam v. Lockhart*, 856 F.2d 1120, 1123 (8th Cir. 1988)(a/k/a designation is well-recognized, reasonable alternative to prisons' committed name policies). The Ninth Circuit also held that the state has a legitimate interest in continued use of an inmate's committed name. *Malik I*, 16 F.3d at 334.

However, the record reflects that Defendants did not infract, sanction or prohibit Mr. Malik from using the mails because he used his legally changed name, but rather because he did not adhere to the regulation requiring him to use his committed name first. The Court is not aware of any clearly established law stating that Mr. Malik is entitled to place his legal name *first* on his outgoing mail. Although the evidence suggests that prison officials may have inconsistently applied DOC Policy 400.280 to Mr. Malik's outgoing mail, there is no evidence that they acted unreasonably. Further, although the Ninth Circuit left open the question of the particular order that Mr. Malik was to use when placing both his names on correspondence, DOC Policy 400.280's requirement that he use the a/k/a designation is consistent with cases relied on by Ninth Circuit in *Malik I and III*. It is also consistent with the Ninth Circuit's recognition that the state's interest in the continued use of an inmate's committed name serves a legitimate penological objective. *Malik I*, 16 F.3d at 334.

Accordingly, the undersigned concludes that prison officials in these circumstances could reasonably believe that they were not violating Mr. Malik's rights by insisting that he comply with DOC's policy to including his religious name after his committed name on his outgoing mail. Therefore, the undersigned recommends that Defendants are entitled to qualified immunity on Mr. Malik's claim for damages on his claim that their refusal to process his outgoing mail violated his First Amendment freedom of speech.

**D.      Claims for Injunctive Relief**

Qualified immunity does not bar actions for declaratory or injunctive relief.  *Presbyterian Church (U.S.A.) United States*, 870 F.2d 518, 527 (9th Cir. 1989)(citing *Harlow Fitzgerald*, 457 U.S. 800, 818 (1982).    In his complaint, Mr. Malik requested both declaratory and injunctive relief. Dkt. # 1, pp. 9-10.

The declaratory relief sought by Mr. Malik includes declarations that Defendants Wimberly, Wesner, Cook and Walston (1) violated his Eighth Amendment rights by subjecting him to psychological torture and intimidation; (2) violated his right to Due Process under the Fifth and Fourteenth Amendments; and (3) violated his First Amendment Freedoms of religion and free speech by not allowing him to purchase religious prayer oils.  Dkt. # 1, p. 10.

The injunctive relief sought by Mr. Malik includes a court order requiring Defendants "(1) to cease withholding [his] mail; (2) to adhere to the court order decree in *Malik v. Brown*, 71 F.3d 724 (9th Cir. 1995); (3) to cease the psychological torture and intimidation of the plaintiff for using both names; and (4) to order the defendants to address and recognize the plaintiff by his legal name period . . . . " *Id.*, p. 10.

Under the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA), Plaintiff is not entitled to prospective relief unless the court enters the necessary findings required by the Act:

> The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A) (emphasis added).

In civil rights cases, injunctions must be granted sparingly and only in clear and plain cases.

REPORT AND RECOMMENDATION - 20

*Rizzo v. Goode*, 423 U.S. 362, 378 (1976).    When a plaintiff seeks to enjoin the activity of a government agency, even within the unitary court system, his case must contend with "the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Id*.  This holding applies even more strongly in cases involving the administration of state prisons. *Turner*, 482 U.S. at 85.  "Running a prison is an inordinately difficult undertaking . . . peculiarly within the province of the legislative and executive branches of government . . . [S]eparation of powers concerns counsel a policy of judicial restraint.  Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities." *Id*. at 85.

It has already been established that Mr. Malik has no constitutional right to exclusively use his legally changed name.  The Ninth Circuit held that the DOC has a legitimate interest in the continued use in Mr. Malik's committed name and that Mr. Malik's constitutional rights are not violated by requiring him to use his committed name at least in conjunction with his legally changed name. *Malik*, 16 F.3d at 334.   Mr. Malik's Eighth Amendment claims of psychological torture and intimidation have been dismissed.  Dkt. # 56.   Defendants were granted summary judgment on Plaintiff's state law contractual claim in April 2008 because he failed to assert or factually allege the violation of any state laws in his complaint. *Id*.  The undersigned has concluded herein that Mr. Malik has no constitutional right to use his religious name before his committed name as to his incoming mail.   Therefore, Mr. Malik is not entitled to the declaratory relief he seeks or the injunctive relief set forth in paragraphs (2), (3) and (4) of his complaint.

The undersigned further finds that Mr. Malik is not entitled to the injunctive relief requested in paragraph (1) of his complaint – that Defendants "cease withholding [his] mail."  As to Mr. Malik's incoming mail, the undersigned has found herein that the DOC has legitimate penological

interests in requiring Plaintiff to use his committed name *first* on his incoming mail based on its need to standardize all identification and to avoid confusion. As there is no violation of a federal right, there is no need for the relief requested.

As to his outgoing mail, the undersigned finds that the relief requested is far too broad, not narrowly drawn, and extends further than necessary to correct any violation of Mr. Malik's right to send mail. Although specific findings of a persistent pattern of misconduct supported by a fully defined record can support broad injunctive relief, *see, e.g. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990), a strong factual record reflecting that Defendants engaged in a persistent pattern of misconduct does not exist in this case.

**E.    Claims Against Defendant Van Boening**

Defendant Van Boening contends that Mr. Malik's claims against him should be dismissed because those allegations against him are based solely on a theory of respondeat superior. *Monell v. New York City Dept. Of Social Service*, 436 U.S. 658, 694 n. 58 (1978); *Padway v. Palches*, 665 F.2d 965, 967 (9th Cir. 1982).

Mr. Malik's Complaint is devoid of any specific factual allegations showing Defendant Van Boening's participation in the deprivation of any constitutionally protected rights. The only allegation against Defendant Van Boening is that he wrote a letter to Mr. Malik setting forth the requirements of DOC Policy 400.280 and advising Plaintiff to follow that policy. (Dkt. # 12, at p. 8, Exh. S (CM/ECF page numbers)). Superintendent Van Boening stated: "The Department of Corrections (DOC) recognizes your right to legally change your name under court order. Indeed it is noted in our computer records and in your central file that your legal name is Dawud Halisi Malik. However, the Department of Corrections also has expectations for the use of your committed name while you are under the jurisdiction of the Department." *Id*. Mr. Van Boening reiterated

DOC Policy 400.280 within the letter and stated further that Plaintiff "may add [his] legally changed name after or beneath your committed name using an AKA designation ...." *Id.*

The Court agrees with Defendants that the writing of this letter does not constitute a deprivation of Mr. Malik's constitutionally protected rights.

The only other basis for allegations against Defendant Van Boening is based on his position as superintendent of McNeil Island Corrections Center. Dkt. # 1, pp. 2-3. As these allegations are based solely on a theory of *respondeat superior*, the Court recommends that Defendant Van Boening is entitled to summary judgment on this basis.

## V. CONCLUSION

The undersigned recommends that Defendants' motion for summary judgment (Dkt. 41) be **GRANTED.** A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 10, 2009**, as noted in the caption.

DATED this   20th   day of March, 2009.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23

# APPENDIX A

**Dkt. # 2:**

Exh. B - Envelope to Cali, "Malik/Riggins" as return address
Exh. F - Envelope addressed to "Malik/Riggins," response to grievance, 11/29/06
Exh. H - Envelope addressed to "Malik/Riggins," 12/06/06
Exh. J - Envelope from DOC addressed to "Malik/Riggins," response to grievance

**Dkt. # 23, Exh. X:**

Envelopes addressed to "Dawud Halisi Malik", delivered to Plaintiff as follows:

April 2007 from U.S. District Court, Tacoma
April 12, 2007 from Mount Zion Baptist Church
April 16, 2007 from Eastbay, Wausau, Wisconsin
April 17, 2007 from the Attorney General's Office (addressed to "Dawud Halisi Malik a/k/a David Riggins" and marked Legal Mail)
April 10, 2007 from U.S. District Court
April 13, 2006 from Attorney General's Office (addressed to "Dawud Halisi Malik a/k/a David Riggins")

**Dkt. # 22:**

Exh. S, p. 4 of 11 - Postage transfer and envelope mailed 6/22/07, "Malik" used first.

Exh. T, p. 5 of 11 - Postage transfer and letter dated 6/22/07 to James Riggins, "Malik" used first.

Exh. U, p. 6 of 11 - Postage transfer and letter dated 6/22/07 to Younkin, "Malik" used first.

Exh. V, p. 7 of 11 - Postage transfer and letter dated 6/22/07 to Cali, "Malik" used first.

**Dkt. 23**, p. 7 of 7 - copies of mailing labels from Lita Schattauer to "Dawud Malik" at Monroe Correctional Complex and copies of "to" portions of envelopes to Plaintiff at MICC where his legal/religious name is used first and then his committed name.

**Dkt. # 74,** Exh. 16 - copies of envelopes and check dated September 16, 2008, October 20, and November 4, 2008, from the State of Washington Office of Financial Management to "Dawud Malik."